**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Case No. SACV 09-881 DOC (SSx)                                                          Date: July 9, 2010

Title: JOE PHUONG NGUYEN; LINDA HOANG VO v. LASALLE BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY MORTGAGE LOAN TRUSTS 2005-AR6; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BANKERSWEST FUNDING CORPORATION; GMAC MORTGAGE; CAL-WESTERN RECONVEYANCE CORPORATION; and DOES 1-10 Inclusive

DOCKET ENTRY
    [I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                                                              Date:_____  Deputy Clerk: _____

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

   Kathy Peterson                                    Not Present
   Courtroom Clerk                                   Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:  ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                         NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING MOTION TO DISMISS AND GRANTING MOTION TO EXPUNGE LIS PENDENS

    Before the Court is Defendants LaSalle Bank, N.A. ("LaSalle") and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively "Defendants") Motion to Dismiss the First Amended Complaint. Also before the Court is Defendants' Motion to Expunge Lis Pendens. The Court finds the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After considering the moving, opposing, and replying papers, the Court GRANTS the Motion to Dismiss and GRANTS the Motion to Expunge.

    I.    Background

        This wrongful foreclosure action concerns residential real property, which Plaintiffs Joe

Phuong Nguyen and Linda Hoang Vo (collectively "Plaintiffs") purchased on or about March 1, 2006 concurrent to obtaining a loan secured by a Deed of Trust in the subject property from Bankerswest Funding Corporation ("Bankerswest"). On May 8, 2008, Plaintiffs were informed by MERS, GMAC Mortgage Corporation ("GMAC"), and Cal Western Reconveyance Corporation ("CWRC") that they were in default on the loan, and Plaintiffs' subsequent efforts to "modify the loan" were rejected. *See* First Amended Complaint (FAC) ¶¶ 11-12. Plaintiffs' allege that they defaulted on the loan because of their inability to pay "unauthorized" fees added to the loan by GMAC. *Id.* ¶ 14.

On December 9, 2008, GMAC Mortgage and MERS initiated foreclosure proceedings and sold the subject property to LaSalle. FAC ¶ 15. LaSalle then commenced an unlawful detainer action against Plaintiffs in Orange County Superior Court on or about February 25, 2009. *Id.* ¶ 18. The state court action resulted in a ruling adverse to Plaintiffs.

## II.     Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Once it has adequately stated a claim, a plaintiff may support the allegations in its complaint with any set of facts consistent with those allegations. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007); *see Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (stating that a complaint should be dismissed only when it lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory). Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Twombly*, 127 S. Ct. at 1968 (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)).

The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006); *Balistreri*, 901 F.2d at 699. Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Additionally, in cases where fraud is alleged, Federal Rule of Civil Procedure 9(b) requires that allegations be stated with particularity. Allegations of fraud must "state the time, place and specific content of the false representations as well as the parties to the misrepresentations." *Alan Neuman Prod., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986).

In general, a court cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b). A court may, however, consider items of which it

can take judicial notice without converting the motion to dismiss to one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Additionally, a court may take judicial notice of "'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Under the incorporation by reference doctrine, courts may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original). In other words, the court may consider documents "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) and no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted). "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under 12(b)(6). *Id.*

### III. Discussion

The First Amended Complaint (FAC) brings claims for: (1) a temporary restraining order and injunctive relief; (2) declaratory relief; (3) violation of 15 U.S.C. § 1692f; (4) violation of 15 U.S.C. § 1692g; (5) violation of 15 U.S.C. § 1692e; (6) violation of 12 U.S.C. § 2605; (7) violation of 12 U.S.C. § 2607; (8) violation of 15 U.S.C. § 1601; (9) violation of 12 U.S.C. § 1972; (10) breach of implied covenant of good faith and fair dealing; (11) undue influence; (12) quiet title; (13) "void or set aside deed of trust"; (14) "void or set aside foreclosure sale"; (15) accounting; (16) fraud; and (17) constructive trust.

#### A.   Federal Fair Debt Collection Practices Act (Claims 3-5)

The FAC's third claim, fourth, and fifth claims allege violations of the Federal Fair Debt Collection Practices Act (FDCPA). The claims allege that MERS effectuated foreclosure proceedings and thereafter took possession of Plaintiffs' property "without authority." FAC ¶ 77. The claims are predicated upon the allegation that Defendants "did not have actual physical possession of the note, had not paid actual consideration for the note, and/or did not have proper indorsement of the note" and therefore "had no present right to possession of the property." *Id.*

The FDCPA prohibits certain conduct by debt collectors. *See* 15 U.S.C. §§ 1692f, 1692g; Cal. Civ. Code § 1788.10. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts

owed or due or asserted to be owed or due another." 15 U.S.C.A. § 1692a(6).

Defendants – and MERS in particular – are not "debt collectors" under the FDCPA. The Court previously and conclusively addressed this issue in its October 13, 2009 order dismissing Plaintiffs' original complaint. In that Order, the Court observed that "an entity that acquires debt when it is not in default is a 'creditor' under the FDCPA, not a 'debt collector.'" *See* Docket 23 (citing *FTC v. Check Investors, Inc.*, 502 F.3d 159, 172-74 (3d Cir. 2007)).

Plaintiffs argue that foreclosure proceedings can fall within the FDCPA's ambit. District courts in this Circuit are somewhat divided on this issue. *See Lee v. Aurora Loan Services*, 2010 WL 1999590, at *3 (N.D. Cal. May 18, 2010) (collecting cases). Defendants cite *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188 (D. Or. 2002), which is the leading authority for the proposition that foreclosure proceedings do not constitute "debt collection" under the FDCPA. In *Hulse*, the district court distinguished collection proceedings from foreclosure proceedings, which are not directed at the "[p]ayment of funds . . . [but rather] the lender is foreclosing its interest in the property." *Id.* at 1204. The holding in *Hulse* has since been called into question by federal courts both within and outside this circuit. *See, Allen v. United Fin. Mortg. Corp.*, 2010 WL 1135787, at *6 (N.D. Cal. Mar. 22, 2010). Having considered these opinions, this Court declines to follow *Hulse*. *Hulse* places undue emphasis on the fact that a non-judicial foreclosure is commonly considered to be an attempt to recover property. *See* 195 F. Supp. 2d at 1204. Recovering property may, in most cases, be the purpose of effectuating foreclosure, but there is no need to examine the intentions of each and every foreclosing entity. Moreover, the statute itself plainly contemplates foreclosure proceedings, as section 1692f proscribes "taking or threatening to take any nonjudicial action to effect dispossession or disablement of property." 16 U.S.C. § 1692f(6). Finally, *Hulse*'s implied concern that the FDCPA would be unreasonably expanded to encompass any and all foreclosure proceedings, including foreclosure sales, is better addressed by restricting the entities or individuals *subject* to liability and not the content of the activities that give rise to liability. In other words, more attention should be paid to whether the defendant is a "debt collector" than whether defendant's activities constitute "debt collection," which is not a term that appears anywhere in the statute's prohibitory language.

In this case, none of the Defendants are "debt collectors." A "debt collector" must have obtained the debt after the debt entered into default. *See Perry v. Stewart*, 756 F.2d 1197, 1208 (5th Cir. 1985). The plain language of section 1962a(6) supports this conclusion, since the statute excludes "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." 15 U.S.C. § 1962a(6)(A); *see also id.* at (6)(F) (excluding "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person"). So too does the statute exclude any person collecting on a debt "obtained by such person as a secured party in a commercial credit transaction involving the creditor." *Id.* at (6)(F)(iv). This Court already held that neither MERS not any other Defendant obtained the debt after it went into default. *See* Docket 23 at 8.

Plaintiffs respond that LaSalle "acquired the debt after it went into default." *See* Opp. at 23. But the FAC does not allege that LaSalle acquired the debt; rather, it alleges that LaSalle purchased the property at a foreclosure sale. *See* FAC ¶ 18; *see also* Exs. B & C to Defs.' RJN.[1] Indeed, after purchasing the property, LaSalle commenced an unlawful detainer action against Plaintiffs. Unlawful detainer actions are distinct from foreclosures. *See McComas v. One West Bank*, 2010 WL 1929594, at *1 (N.D. Cal. May 12, 2010). And there is no suggestion – nor could there be – that an unlawful detainer action is made in order to collect on a debt; any debt held by the occupant of the residence would have been settled by the foreclosure sale.

Plaintiffs also imply that MERS obtained the debt after the debt was in default. *See* Opp. at 22 (arguing that the "foreclosing Defendants" obtained the debt after the debt was in default). This argument is contradicted by the FAC, which states that "MERS alleged that Plaintiffs were in default on or about May 8, 2008." FAC ¶ 11. Defendants, in addition, observe that Plaintiffs are unable to sustain the argument that MERS obtained the debt after the debt was in default because: (1) Plaintiffs allege that the debt never was in default, *id.* ¶ 65; and (2) Plaintiffs allege that MERS engaged in various fraudulent activities *at the time of the loan's inception*, *see id.* ¶¶ 140-44. Due to the liberal standard favoring amendments of pleadings, the Court will grant Plaintiffs leave to file an amended pleading that contains plausible allegations that MERS obtained the debt after the debt was in default.

Defendants argue that the doctrine of res judicata bars Plaintiffs' third, fourth, and fifth claims. According to Defendants, the validity of the foreclosure should have been litigated in the state court unlawful detainer action, which is concerned with "tenant's right to possession of the premises." *See* Mot. at 7 (quoting *Thomas v. Housing Authority of the County of Los Angeles*, 2005 WL 6136432 (C.D. Cal. 2005)). However, the state court opinion ruling in LaSalle's favor in the unlawful detainer action declined to address whether title to the property was acquired by fraudulent means. *See* Ex. D to Defs.' RJN at 1 (noting that "an unlawful detainer action is not res judicata on the question of fraud in the acquisition of title"). The state court's minute order distinguished "complicated ownership issues involving assertions of fraud and deceptive practices" from an unlawful detainer action's ordinary concern with the "trustee's compliance with all applicable statutory requirements [including] any *procedural* irregularity in the trustee's sale." *See id.* at 2 (emphasis added).

When determining whether to give preclusive effect to the judgment of a state court, a federal court must "apply state rules governing preclusion." *Dunn v. Cate*, 2010 WL 148197, at *3 (E.D. Cal. Jan. 12, 2010) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 83, 104 S.Ct. 892 (1984)). "To determine whether a state court judgment should have preclusive effect in a federal court action, federal courts apply state rules governing preclusion. In California, a party is

---

[1] Defendants' Request for Judicial Notice is GRANTED. All of the exhibits attached to the Request for Judicial Notice are public filings and the Court may therefore take judicial notice of these documents. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)

precluded from relitigating an issue already decided if there was a final judgment on the merits, the issue decided in the prior adjudication is identical to the one presented in the new action, and the party against whom preclusion is asserted was a party, or in privity with a party, to the prior adjudication." *Id.* As *Dunn* recognized, "judgment in [an] unlawful detainer [action] has very limited res judicata effect because only a limited number of claims are cognizable in such actions." *Id.* at *4 (citing *Vella v. Hudgins*, 20 Cal.3d 251, 255 (1977)).

The FAC's third claim alleges a violation of 15 U.S.C. § 1692f predicated upon MERS' lack of authority to effectuate the foreclosure sale of the subject property. FAC ¶ 77. The FAC's fourth claim alleges a violation of 15 U.S.C. § 1692g predicated upon MERS' purported failure to notify Plaintiffs of their rights under the statute and, in addition, did not "validat[e] the debt" as required under the statute. *Id.* ¶¶ 89-93. The FAC's fifth claim alleges a violation of 15 U.S.C. § 1692e predicated upon (1) MERS' failure to secure the authority necessary to conduct a foreclosure sale; and (2) MERS' fraudulent representation that the individuals who signed and executed the Notices of Default, Notices of Sale, and Trustee Deeds were employed by or acting on behalf of the actual beneficiary. *See id.* ¶¶ 97-110.

The state court's minute order does not indicate whether Plaintiffs raised any or all of these issues in the unlawful detainer action. The parties have attached no other record of the state court proceedings, including hearing transcripts and other orders issued by the state court. Nor have Defendants convincingly argued that any of these issues were relevant to whether Plaintiffs had a right to possession of the subject property. *See Thomas*, 2005 WL 6136432, at *6. A determination of the preclusive effect of the state court judgment is therefore premature at the present time.

For the foregoing reasons, the third, fourth, and fifth claims are DISMISSED WITH PREJUDICE AND WITHOUT LEAVE TO AMEND as to Defendant LaSalle and DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND as to Defendant MERS.

### C.    Violations of Real Estate Settlement Procedures Act (Claims 6, 7)

The FAC's sixth and seventh claims allege that Defendants violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.* The FAC alleges two violations of RESPA, both of which are legally infirm.

The FAC's sixth claim alleges that Defendants violated 12 U.S.C. § 2605 by failing to "notify Plaintiffs in writing of any assignment, sale, or transfer of the servicing of the loan to any other person or entity." 12 U.S.C. § 2605 requires that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." Such notice must provided at least 15 days prior to the "effective date of the transfer," *id.* § 2605(b)(2), and the notice must include "(A) [t]he effective date of transfer of the servicing[;] (B) [t]he name, address, and toll-free or collect call telephone number of the transferee

servicer" and other relevant contact information, *id.* § 2605(b)(3).  The loan "servicer" is defined as "the person responsible for [receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan] (including the person who makes or holds a loan if such person also services the loan)."  12 U.S.C. § 2605(I).

The FAC does not allege that either MERS or LaSalle is a loan servicer.  It is implausible that LaSalle would be a loan servicer, since the FAC concedes that LaSalle simply purchased the subject property at a foreclosure sale.  *See* FAC ¶ 18.  The FAC also concedes that MERS did not service the loan, since the FAC simultaneously alleges that Defendant GMAC Mortgage Corporation (GMAC) was the "alleged servicer" of the loan.  *See id.* ¶ 43.

Nevertheless, Plaintiffs should be afforded an opportunity to amend their complaint.  The key allegation in the FAC's sixth claim is vague: "Plaintiffs have suffered harm because Plaintiffs were sending payments to entities who were no longer servicing the loan and the payments were not being properly applied . . ."  *Id.* ¶ 115.  The identity of the "entities no longer servicing the loan" could go a long way to overcoming the inherent implausibility of whether either MERS or LaSalle were loan servicers.  There are simply no facts in the FAC to demonstrate that either entity was "responsible for [] receiving any scheduled periodic payments from a borrower," *see* 12 U.S.C. § 2605(I), and was thereby statutorily required to notify Plaintiffs of a change in the identity of the servicer.  The FAC's sixth claim is therefore DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.

The FAC's seventh claim alleges that Defendants violated 12 U.S.C. § 2607 by paying "hidden fees . . . to third parties," including a real estate broker.  FAC ¶ 117-121.  Plaintiffs allege they suffered harm as a result of this violation because they "unknowingly paid certain fees which were above and beyond what was provided in the written estimate of the charge or range of charges."  *Id.* ¶ 121.

12 U.S.C. § 2607 prohibits in relevant part the payment of "kickbacks and unearned fees" in connection with a real estate mortgage transaction:

> (a) **Business referrals** No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.
>
> (b) **Splitting charges** No person shall give and no person shall accept any portion, split or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction

>involving a federally related mortgage loan other than for services actually rendered.

12 U.S.C. § 2607(a), (b).

The statute identifies certain exceptions for payments rendered, bona fide salaries or compensation, cooperative brokerage and referral arrangements, and certain types of affiliated business arrangements. *Id.* § 2607(c).

A claim arising under section 2607 may be brought within 1 year from the date of the occurrence of the violation. 12 U.S.C. § 2607. The Ninth Circuit has not ruled on whether section 2607's one year statute of limitations period may, in appropriate circumstances, be equitably tolled until the borrower "discovers or had reasonable opportunity to discover the [alleged] violations." *Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1117 (E.D. Cal. 2009). However, the Seventh Circuit has suggested that RESPA's statute of limitations may be tolled, in light of the fact that the statute of limitations is not jurisdictional. *See Lawyers Title Ins. Co. v. Dearborn Title Corp.*, 118 F.3d 1157, 1166-67 (7th Cir. 1997). In *Marcelos v. Dominguez*, 2008 WL 1820683, *6 (N.D. Cal. Apr. 21, 2008), the district court cited *Lawyers Title* with approval and noted that "a number of district courts have held that RESPA's statute of limitations is subject to equitable tolling." *See id.* at *6 & n. 3. This Court finds the opinions in *Lawyers Title* and *Marcelos* convincing and, on that basis, concludes that RESPA's statute of limitations may be equitably tolled.

Here, Plaintiffs entered into the loan transaction on March 1, 2006, more than one year before the date this lawsuit was filed. Plaintiffs do not satisfactorily and specifically allege the basis upon which the statute of limitations may be equitably tolled with respect to Defendants' alleged violation of section 2607. Even if Defendants, or any of them, "paid fees, or kickbacks, or a thing of value pursuant to an agreement or understanding," Plaintiffs do not identify the basis for their information and belief, *see Sandisk Corp. v. LSI Corp.*, 2009 WL 3407375, at *2 (N.D. Cal. Sept. 18, 2009), and therefore frustrate any attempt to determine whether the doctrine of equitable tolling applies.

Plaintiffs cite *Reiser v. Residential Funding Corp.*, 380 F.3d 1027 (7th Cir. 2004) for the proposition that the applicability of equitable tolling should not be resolved at the Rule 12(b)(6) stage. While *Reiser*'s argument is well-taken, a statute of limitations also exists to "protect[] defendants" from having to defend against stale conduct. *See Lawyers Title*, 118 F.3d at 1166. And a case involving a clear application of RESPA's statute of limitations should not be muddled by artful, vague, and conclusory pleading by a plaintiff, since that would eviscerate the purpose of the statute of limitations.

The FAC's seventh claim is therefore DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND. Plaintiffs' amended pleading, if any, shall clearly and plainly articulate the basis for the alleged violation of section 2607, the plausible grounds for Plaintiffs' information and belief, and the basis for the applicability of equitable tolling.

### D.    Violation of Truth in Lending Act, 15 U.S.C. § 1601

The FAC's eighth claim alleges that Defendants violated 15 U.S.C. § 1601 by committing legion abuses, many of which are not cognizable under TILA and others of which are not sufficiently pled.  Each alleged violation is discussed separately herein.

15 U.S.C. § 1601 simply sets forth the "Congressional findings and declaration of purpose" under TILA.  Section 1601 does not create a private right of action.  Nor does any other statute create a private right of action under section 1601.  Rather, the private right of action against alleged violations of the Truth in Lending Act (TILA) only extends to violations of "subpart B," which encompasses 15 U.S.C. §§ 1631, 1632, 1633, 1634, 1635, 1637, 1637a, 1638, 1639, 1639a, 1640, 1641, 1642, 1643, 1644, 1645, 1646, 1647, 1648, 1649, 1650, 1651.  *See* 15 U.S.C. § 1640.

The FAC identifies two TILA sub-sections: § 1601 and § 1641.  The former creates no private right of action, and the latter does not identify any "required disclosures."  Section 1641 merely provides that violations of *other* sub-sections may give rise to civil liability.

Plaintiffs do not identify any other TILA sub-sections that Defendants allegedly violated.  Instead, Plaintiffs summarily allege that "Defendants MERS, Lender, and Servicer were required to provide Plaintiffs with a mandatory Truth-in-Lending disclosure statements [sic] and notice of the borrower's right to rescind, specifying the date on which the three-day rescission period expires."  FAC ¶ 124.  However, there is *no* statute that requires such a disclosure.  Plaintiffs appear to be referring to 15 U.S.C. §§ 1632 and 1637, which in relevant part identify the manner in which a "creditor" must disclose the "fixed annual percentage rate," the "variable percentage rate" (if applicable), "other fees imposed by the creditor," "estimates of fees which may be imposed by third parties," a "statement of risk of loss of dwelling," and other information specified by the statute.  *See id.*

The FAC's eighth claim elects for vague and conclusory allegations over specific facts.  For example, paragraph 125 of the FAC alleges that certain Defendants "fail[ed] to provide required disclosures prior to consummation of the transaction; fail[ed] to make required disclosures clearly and conspicuously in writing; fail[ed] to timely deliver to Plaintiffs certain notices required by statute; plac[ed] terms prohibited by statute into the transaction; and fail[ed] to disclose all finance charge details and the annual percentage rate based upon properly calculated and disclosed finance charges and amounts financed."  FAC ¶ 125.  The first several clauses are impermissibly vague insofar as they refer to "required disclosures" without identifying those disclosures with any specificity.  *See Marks v. Chicoine*, 2007 WL 160992, at *7 (N.D. Cal. 2007) (stating that complaint's failure to identify violations with specificity impermissibly denies "the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

As far as the "finance charge details" are concerned, there is no requirement that a creditor must disclose the "details"; the only necessary disclosure is the disclosure of the actual finance

charge. 12 C.F.R. § 226.17(c)(1).

Nor is a creditor required to disclose "the annual percentage rate based upon properly calculated and disclosed finance charges and amounts financed," as Plaintiffs allege. *See* FAC ¶ 125. 12 C.F.R. § 226.18(e) requires lenders to disclose the "annual percentage rate, using that term, and a brief description such as 'the cost of your credit as a yearly rate.'" "[T]he disclosures should reflect a composite annual percentage rate based on the initial rate for as long as it is charged and, for the remainder of the term, the rate that would have been applied using the index or formula at the time of the consummation." *See* 12 C.F.R. Pt. 226, Supp. I ¶ 226.17(c)(10)(I). There is no requirement that the annual percentage rate disclosed by the creditor must incorporate a properly "disclosed" finance charge and/or amount financed.

Finally, the FAC's eighth claim alleges that (1) "[r]ecords from the transaction indicate [certain Defendants] extended credit to Plaintiffs without regard to their ability to pay, and potentially falsified data to get the loan approved," FAC ¶ 126; and (2) certain Defendants "have a pattern and practice of extending credit to consumers under high rate mortgages without regard to the consumers' repayment ability," *id.* ¶ 127. None of TILA's sub-sections – including the sub-sections that give rise to a private right of action – prohibit the extension of credit without regard to a borrower's ability to pay. Nor do TILA's sub-sections prohibit "potentially" committing a violation of TILA's disclosure requirements; they prohibit violations and do not prohibit non-violations. Plaintiffs can allege that Defendants "falsified data to get the loan approved" and thereby attempt to state a claim upon whcih relief may be granted. But they cannot speculate aloud about "potential" violations in order to circumvent Fed. R. Civ. P. 11.

Defendants argue that the FAC's "TILA claim is time-barred." Mot. at 15. TILA's one year statute of limitations bars Plaintiffs' damages claims. *See* 15 U.S.C. § 1640(e) (providing that action may be brought "within one year of the violation"). TILA's one-year statute of limitations may be equitably tolled in appropriate circumstances to "suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or non-disclosures that form the basis of the TILA action." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986). The Court finds it premature to determine whether the one-year statute of limitations must be equitably tolled, in light of the fact that Plaintiffs have yet to identify *with specificity* the alleged TILA violations and the *specific* statutes and/or regulations that Defendants are alleged to have violated.

Defendants also argue that Defendant MERS is not a creditor. The FAC alleges that "MERS, LENDER, and SERVICER are 'creditors' as that term is defined by 15 U.S.C. § 1601." FAC ¶ 123 (emphasis in original); *see also* Opp. at 28. However, 15 U.S.C. § 1601 does not define the term "creditor"; the term "creditor" is in fact defined by 15 U.S.C. § 1602(f), which provides in relevant part that the creditor is "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. § 1602(f)(2). Though the FAC alleges that "Plaintiffs purchased their home

and obtained a loan evidenced by a DEED OF TRUST and NOTE through Defendant BANKERSWEST FUNDING CORPORATION," it also claims that "Plaintiffs never received any correspondence setting forth who funded the loan." FAC ¶¶ 9-10. Plaintiffs have not supplied the Court with the mortgage documents, including the loan agreement and the deed of trust. The face of these documents likely reveals the identity of the "person to whom the debt arising from the consumer transaction [was] initially payable." At the present time, the Court concludes that Plaintiffs could prove that MERS was the creditor.

The FAC's eighth claim is therefore DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.

### E. Violation of the Bank Holding Company Act

The FAC's ninth claim alleges in relevant part that MERS violated 12 U.S.C. § 1972 by (1) varying the consideration on the loan; (2) adding hidden fees and kickbacks to brokers; (3) adding MERS as a beneficiary on the Note. *See* FAC ¶¶ 141-44.

12 U.S.C. § 1972 proscribes certain types of "tying arrangements." Specifically, the statute prohibits a bank from "extend[ing] credit, leas[ing] or sell[ing] property . . . on the condition or requirement – (A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service." 12 U.S.C. § 1972(1)(A).

Banks and "institution-affiliated" parties are subject to liability under section 1972. *See* 12 U.S.C. § 1972(2)(F). An "institution-affiliated" party is (1) "any director, officer, employee, or controlling stockholder [] of, or agent for, an insured depository institution; (2) any other person who has filed or is required to file a change-in-control notice with the appropriate Federal banking agency[]; (3) any shareholder . . ., consultant, joint venture partner, and any other person as determined by the appropriate Federal banking agency (by regulation or case-by-case) who participates in the conduct of the affairs of an insured depository institution; and (4) any [of a defined class of] independent contractor[s]." 12 U.S.C. § 1813(u).

Plaintiffs argue that MERS – as the loan servicer – was an agent of Bankerswest and is thereby considered an "institution-affiliated" party under 12 U.S.C. § 1813(u)(1). Defendants respond that Plaintiffs' legal theory is "preposterous" and that 12 U.S.C. § 1972 was not "intended to apply to a party in MERS' situation." Mot. at 17. Defendants cite no authority for these arguments, which are contradicted by the plain terms of 12 U.S.C. § 1813(u)(1), which extends liability to "agents." Certainly, it may later be revealed that MERS is not, in fact, an agent of the bank, but that is not an argument made by Defendants.

Nevertheless, the alleged conduct does not constitute a violation of 12 U.S.C. § 1972. The FAC alleges that Defendants engaged in three violations of the statute: (1) inducing Plaintiffs to

enter into a prepayment penalty agreement; (2) adding "additional fees in the form of hidden increased points and interest"; and (3) allowing MERS to act as nominee and alleged beneficiary on the loan. FAC ¶¶ 141-43. All of these agreements are of the variety "usually provided in connection with a loan, discount, deposit, or trust service." 12 U.S.C. § 1972(1)(C). Moreover, none of the FAC's allegations aver that Plaintiffs were induced to "obtain some additional credit, property, or service," *id.* at (1)(A)-(B), in consideration of the loan transaction.

Instead, Plaintiffs choose to proceed on the bizarre theory that in consideration for the prepayment penalty, broker kickback, and MERS' status as nominee, Plaintiffs were provided with a decreased loan margin, varied consideration on the loan, and the loan itself.

However, as this Court previously recognized, "[s]ection 1972 is not a general regulatory provision designed to insure fair interest rates, collateral requirements, and other loan agreement terms. It has a narrow target; it is 'intended to provide specific statutory assurance that the use of the economic power of a bank will not lead to a lessening of competition or unfair competitive practices.'" October 13, 2009 Order at 12 (quoting *Freidco of Wilmington, Delaware, Ltd. v. Farmers Bank of State of Del.*, 499 F. Supp. 995, 1001 (D. Del. 1980)).

Plaintiffs simply separate the terms of a single loan transaction into a number of "mini-transactions," but Bankerswest and MERS are not alleged to have provided "additional credit, property, or services" that were not *part of* the loan agreement itself.

For the foregoing reasons, the FAC's ninth claim is DISMISSED WITH PREJUDICE.

### G.      Violation of Breach of Implied Covenant of Good Faith

The FAC's tenth claim alleges in relevant part that MERS breached its implied covenant of good faith and fair dealing by failing to ensure the accuracy of Plaintiffs' debt before foreclosing on the loan and effectuating the foreclosure sale of the subject property. FAC ¶¶ 147-149.

A claim for breach of implied covenant of good faith and fair dealing must allege bad faith and an intent to frustrate the purposes of the contract. *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371 (1990). "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Communale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 658 (1958). The implied covenant "rests upon the existence of some specific contractual obligation. [It] is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." *Racine Laramie, Ltd. v. Dept. of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031 (1992).

Plaintiffs concede that no written contract existed between MERS and Plaintiffs. Instead,

Plaintiffs argue that an implied in fact contract existed between MERS and Plaintiffs. This claim is nowhere to be found in the FAC. And the Court rejected this very argument in its October 13, 2009 minute order, noting that (1) a claim for breach of implied covenant does not arise from a mere fiduciary-like relationship; (2) a claim for breach of implied covenant must arise out of a specific contractual provision. *See* October 13, 2009 Order at 12-13.

The Court sees no need to modify these holdings. In light of the fact that Plaintiffs concede the absence of any contract entered into between MERS and Plaintiffs, it is clear that any further amendment will be futile. The FAC's tenth claim is DISMISSED WITH PREJUDICE.

### H.      Undue Influence

The FAC's eleventh cause of action alleges in relevant part that MERS exercised "undue influence" over Plaintiffs. The Court has already recognized that undue influence is merely a defense; it is not a stand-alone claim upon which relief may be granted. *See* October 13, 2009 Order at 13. In response, Plaintiffs argue that a claim for undue influence can brought in an "action for rescission of a contract." But that simply means that undue influence can form the basis for rescission and, indeed, Plaintiffs have sought rescission as a remedy. The eleventh claim is therefore DISMISSED WITH PREJUDICE.

### I.      Quiet Title

The FAC's twelfth claim is to quiet title. A claim for quiet title determines "all conflicting claims to the property in controversy and [] decree[s] to each such interest or estate therein as he may be entitled to." *Newman v. Cornelius*, 3 Cal. App. 3d 279 (1970). "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637 (1934). Plaintiffs concede that they have only "alleged" the ability to tender, but have not in fact tendered the amount due under the loan agreement. *See* Opp. at 17. The FAC's twelfth claim is therefore DISMISSED WITHOUT PREJUDICE to Plaintiffs' ability to re-assert the claim after "paying the debt" secured by the residential real property.

### J.      Void and/or Set Aside Deed of Trust

The FAC's thirteenth claim seeks to declare void and/or set aside the deed of trust. This claim is predicated upon the allegation that MERS "did not have the right to initiate, sell, and/or purchase Plaintiffs's Property at non-judicial foreclosure sale." FAC ¶ 169. The FAC further alleges that the foreclosure sale of the subject property was also "void," as "MERS [has] no estate, right, title, or interest in the property, despite the illusion of the validity of the foreclosure sale and current Trustees Deed. The sale was invalid and the deed is invalid because the recitals in a Trustees Deed cannot render effective a sale that had no contractual basis or in the alternative where Defendants were not the holder in due course of the NOTE." FAC ¶ 171. In essence, Plaintiffs allege that the trustee's sale was

improper because MERS lacked authority to sell the subject property.

The claim fails to plainly and clearly identify the basis upon which the deed of trust may be declared void. *See* Fed. R. Civ. P. 8. Every allegation challenges the conduct of MERS, but not the original deed of trust. Indeed, the gravamen of the claim is that MERS has misrepresented itself as the holder of the deed of trust when, in fact, it was not. These claims are more properly addressed in the FAC's fourteenth claim to set aside the trustee's sale, but they do not address the validity of the underlying deed of trust. The thirteenth claim is therefore DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.

### K.     Set Aside Trustee's Sale

The FAC's fourteenth claim requests that the Court set aside the trustee's sale on the grounds that, *inter alia*, MERS and LaSalle "did not have physical possession of the NOTE, did not pay actual consideration for the NOTE, and did not have a properly indorsed NOTE at the time of commencing the foreclosure process, and ultimately at the time of the foreclosure sale." FAC ¶ 175. The FAC further alleges in relevant part that MERS and LaSalle "falsely endorsed the foreclosure documents and did not have the requisite authority from the 'true beneficiary' to foreclose on the Property at the time of the foreclosure sale." *Id.* ¶ 176. The FAC also alleges deficiencies in terms of the fees charged in connection with the trustee's sale, the contractual basis for the trustee's sale, the authority to conduct the trustee's sale, and propriety of the trustee's sale. *Id.* ¶¶ 177-180.

A claim to set aside a foreclosure sale must be "accompanied by an offer to pay the full amount of the debt for which the property was security." *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d 575 (1984). Plaintiffs have made no such offer and merely allege the ability to tender the principal due under the loan. *See* FAC ¶ 134.

The fourteenth claim is therefore DISMISSED WITHOUT PREJUDICE to Plaintiffs' ability to re-assert a claim to set aside the trustee's sale after offering to tender the *full* amount, including interest and fees, of the debt for which the property was security.

### L.     Accounting

The FAC's fifteenth claim seeks an accounting of amounts that certain Defendants allege "is still due and owing" from Plaintiffs. FAC ¶ 183. However, as Defendants argue, an accounting must be sought for amounts owed *to* not owed *by* the party bringing the claim. *See Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009). Plaintiffs do not meaningfully respond to this argument. *See* Opp. at 36. The fifteenth claim is therefore DISMISSED WITH PREJUDICE.

### M.     Fraud

The FAC's sixteenth claim alleges that Defendants made fraudulent representations including in relevant part: (1) MERS falsely representing it was the Beneficiary under the Deed of Trust; and (2) LaSalle falsely representing it was the foreclosing beneficiary when it had not paid consideration for the note and mortgage. FAC ¶¶ 187-88.

Under California law, the elements of a claim for fraud are (1) misrepresentation (including false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 954 (1997).

A claim for fraud must be alleged in accordance with Rule 9(b)'s heightened pleading requirements. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Allegations of fraud must specify the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).

The FAC's sixteenth claim fails to satisfy Rule 9(b)'s requirements because it does not identify the time or place of the false representations insofar as MERS and LaSalle are concerned. *See* FAC ¶¶ 188-89. The sixteenth claim is therefore DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND.

### N.   Constructive Trust

The FAC's seventeenth claim – erroneously titled the "eighteenth cause of action" – requests that LaSalle "hold[] whatever interest it claims in the Property in trust for Plaintiffs." FAC ¶ 212. However, under California law, a constructive trust is "not an independent cause of action but merely a type of remedy." *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1023 n. 3 (2000). The seventeenth claim is therefore DISMISSED WITH PREJUDICE.

### O.   Request for Injunctive Relief

The FAC's first claim requests that the Court enjoin Defendants from evicting Plaintiffs from the subject property. In light of the Court's dismissal of the underlying claims, the claim for injunctive relief must be dismissed as well. *See Hernandez v. First Am. Loanstar Trustee Servs.*, 2010 WL 1445192, at *5 (S.D. Cal. Apr. 12, 2010). The first claim is therefore DISMISSED WITHOUT PREJUDICE.

### P.   Request for Declaratory Relief

The FAC's second claim requests, *inter alia*, that the Court make a "judicial determination of each Defendants [sic] rights, obligations and duties, and [issue] a declaration as to who

the actual owner of the Note and Mortgage is." FAC ¶ 71; *see also id.* ¶ 72 (requesting that Court "issue appropriate orders regarding the recording of the Notice of Default, and subsequent Notice of Trustee's Sale, and actual Non-Judicial Foreclosure Sale, and whether any Defendants [sic] had any right or interest in the property to record such instruments and complete the non-judicial foreclosure sale."); *id.* ¶ 73 (requesting that Court require "Defendants to physically produce the Original Note and Chain of title, and validate that real consideration was paid for the Note and Mortgage").

The claim is duplicative of the FAC's other claims, as it alleges that the foreclosure sale was invalid and, on those grounds, should be set aside. "The object of the [declaratory relief] statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues." *Brittain v. Indymac Bank*, No. C-09-2953, 2009 WL 2997394, at *5 (N.D. Cal. Sept. 16, 2009).

The FAC's second claim is duplicative of its other claims. Plaintiffs respond that the declaratory relief claim seeks a unique remedy, but that is besides the point. The issues that give rise to declaratory relief are nothing more than the issues which give rise to Plaintiffs' other claims. The second claim is therefore DISMISSED WITHOUT PREJUDICE.

     **Q.**    **Motion to Expunge Lis Pendens**

On or about October 2, 2009, Plaintiffs recorded a Notice of Pendency of Action ("Lis Pendens") in the Official Records of Orange County. *See* Ex. D to Defs.' RJN in Support of Mot. to Expunge.[2]

"A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title to or right to possession of the real property described in the notice." *Urez Corp. v. Superior Court*, 190 Cal. App. 3d 1141, 1144 (1987). Pursuant to Cal. Code Civ. Proc. § 405.20, "[a] party to an action who asserts a real property claim may record a notice of pendency of action in which that real property claim is alleged." The notice must be "filed with the court in which the action is pending," Cal. Code Civ. Proc. § 405.22, and failure to file the notice with the court shall render the notice void and invalid, *see id.* § 405.23. Here, the docket clearly reveals that Plaintiffs failed to file the notice of pendency with this Court and that alone is a reason to grant the motion to expunge.

In any event, the notice may be expunged due to the dismissal of the FAC's claims. *See id.* § 405.32 (providing that on a party's motion, the Court "shall order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable

---

[2] Defendants' Request for Judicial Notice in Support of their Motion to Expunge Lis Pendens is GRANTED in its entirety. All of the exhibits attached to the Request for Judicial Notice are public filings and the Court may therefore take judicial notice of these documents. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)

validity of the real property claim."); *but see Quiroz v. Countrywide Bank, N.A.*, 2009 WL 3849909, at *6 (N.D. Cal. Nov. 16, 2009) (denying "premature" motion to expunge lis pendens on the grounds that "[c]ourt grant[ed] plaintiff leave to amend [complaint]"). Having reviewed the claims in the FAC, the Court finds no validity to Plaintiffs' claim to the title or right to the subject property.

The Motion to Expunge is therefore GRANTED.

Defendants' request for reimbursement of attorneys' fees incurred in preparation of the motion to expunge lis pendens is DENIED. Defendants claim to have incurred $6,746.50 in attorneys' fees preparing the motion to expunge as well as the reply in support of the motion to expunge. The Court does not consider this amount reasonable and, in any event, would decline to award attorneys' fees in light of the substantial financial hardship faced by Plaintiffs.

Defendants' request that Plaintiffs be ordered to post a bond to maintain the lis pendens is STRICKEN AS MOOT.

IV. Disposition

For the foregoing reasons, the Motion is GRANTED. The FAC's ninth, tenth, eleventh, fifteenth, and seventeenth claims are DISMISSED WITH PREJUDICE as to both LaSalle and MERS. The FAC's third, fourth, and fifth claims are DISMISSED WITH PREJUDICE as to LaSalle. The FAC's third, fourth, and fifth claims are DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND as to MERS. The FAC's first, second, sixth, seventh, eighth, twelfth, thirteenth, fourteenth, and sixteenth claims are DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND as to both LaSalle and MERS. The Court further GRANTS the Motion to Expunge Lis Pendens.

Plaintiffs are hereby granted to leave to file an amended pleading within ten (10) days of the filing of this Order.

The Clerk shall serve this minute order on all parties to the action.